LEXSEE 2006 U.S. DIST. LEXIS 61980

**SAVANAH ILISE SMITH, BRANDY LEIGH WILKISON, and PAMELA GENE KARM, Individually and as Representatives of the ESTATE OF ALLAN KEITH SMITH, Deceased, Plaintiffs, v. HALLIBURTON COMPANY, KELLOGG, BROWN & ROOT SERVICES, INC., and KELLOGG, BROWN AND ROOT, INC., Defendants.**

CIVIL ACTION NO. H-06-0462

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

*2006 U.S. Dist. LEXIS 61980*

**August 30, 2006, Decided**
**August 30, 2006, Filed**

**PRIOR HISTORY:** *Smith v. Halliburton Co., 2006 U.S. Dist. LEXIS 30530 (S.D. Tex., May 16, 2006)*

**COUNSEL:** [*1] For Savanah Ilise Smith, Brandy Leigh Wilkinson, Pamela Gene Karm, Individually and as Representatives of the Esate of Allan Keith Smith, Deceased, Plaintiffs: Jim L Culpepper, Jim L Culpepper & Associates, Houston, TX.

For Halliburton Company, Kellogg, Brown & Root Services Inc, Kellogg, Brown & Root Inc., Defendants: David Kasanow, Herbert Lawrence Fenster, Raymond B Biagini, McKenna Long et al, Washington, DC; Robert Ellison Meadows, King and Spalding, Houston, TX.

**JUDGES:** SIM LAKE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** SIM LAKE

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Plaintiffs, Savanah Ilise Smith, Brandy Leigh Wilkison, and Pamela Gene Karm, individually and as representatives of the Estate of Allen Keith Smith, deceased, filed this action in Texas state court against defendants, Halliburton Company, Kellogg, Brown & Root Services, Inc., and Kellogg, Brown & Root, Inc., n1 alleging negligence stemming from a suicide bomb attack on a base in Iraq. n2 Defendants timely removed the action to this court asserting federal question and federal officer jurisdiction under *28 U.S.C. §§ 1441* and *1442*. n3 Pending before the court are Defendants' [*2] Renewed Motion to Dismiss Pursuant to *Rule 12(b)(1) of the Federal Rules of Civil Procedure* (Docket Entry No. 31), Plaintiffs' Response (Docket Entry No. 34), and Defendants' Reply to Plaintiffs' Response to Defendants' Renewed Motion to Dismiss (Docket Entry No. 37). For the reasons explained below, Defendants' Renewed Motion to Dismiss will be granted.

n1 Defendants' pleadings state that on December 31, 2005, the principal business and related operations, assets and liabilities, rights, obligations, and contracts of Kellogg Brown & Root, Inc. were transferred to Kellogg Brown & Root LLC, a Delaware entity.

n2 Plaintiffs' Original Petition, Exhibit A2 to defendants' Notice of Removal, Docket Entry No. 1.

n3 Defendants' Notice of Removal, Docket Entry No. 1.

### I. Factual and Procedural History

Only a brief factual summary of this case is required because the court's previous Memorandum Order and Opinion recited the factual background in detail. n4 On [*3] or about December 21, 2004, a suicide bomber walked into the dining facility n5 ("DFAC") at Forward Operating Base ("FOB") Marez in Mosul, Iraq, and detonated explosives packed with ball bearings and other shrapnel. n6 Allen Keith Smith was killed, along with twenty-one other people.

EXHIBIT 2

Case 1:06-cv-01616-CKK   Document 10-3   Filed 10/26/2006   Page 2 of 8

Page 2
2006 U.S. Dist. LEXIS 61980, *

n4 Memorandum Opinion and Order, pp. 2-3, Docket Entry No. 13.

n5 Plaintiffs' Original Petition refers to the dining facility as the "mess tent" but the court will refer to it as the dining facility, or DFAC, because this is the terminology used in the relevant contracts.

n6 Plaintiffs' Original Petition, P 10, Exhibit A2 to defendants' Notice of Removal, Docket Entry No. 1.

A division of defendant Kellogg Brown & Root, Inc. was operating in Iraq pursuant to Contract No. DAAA09-02-D-0007 (the "LOGCAP Contract"), under which defendants provided numerous services to the United States military throughout the world. n7 LOGCAP Contract requirements are listed as Task Orders, and Task Order 59 pertains to FOB Marez and governs [*4] the food services defendants provided at FOB Marez. n8

n7 The LOGCAP Contract, Exhibit A to Defendants' Renewed Motion to Dismiss Pursuant to *Rule 12(b)(1) of the Federal Rules of Civil Procedure.* LOGCAP stands for Logistics Civil Augmentation Program. Army Regulation 700-137, Logistics Civil Augmentation Program (16 December 1985). Portions of the LOGCAP Contract are attached as Exhibit A to Defendants' Renewed Motion to Dismiss, Docket Entry No. 34. This is actually the third LOGCAP contract, covering from December 2001 to the present.

n8 Task Order 59 is attached as Exhibit A to Defendants' Renewed Motion to Dismiss, Docket Entry No. 32. Plaintiffs complain that the contracts attached to Defendants' Renewed Motion to Dismiss are not the same documents produced by defendants in response to plaintiffs' discovery request. Plaintiffs' Response to Defendants' Renewed Motion to Dismiss, P 9, Docket Entry No. 34. This is immaterial because plaintiffs have had adequate time to read and respond to the contracts and to all of the other documents attached to Defendants' Renewed Motion to Dismiss.

[*5]

Plaintiffs allege that defendants were negligent in (1) failing to properly secure the DFAC, (2) failing to properly monitor the DFAC, (3) allowing a large number of people to gather at the mess tent at the same time, (4) not providing a search of the people who entered into the DFAC, (5) failing to have a secure perimeter around the DFAC, (6) failing to warn people that came into the DFAC that defendants had provided no security, and (7) failing to take reasonable precautions to make the DFAC safe from attacks and explosions of the type that killed Smith. As a result of this negligence, plaintiffs allege that the suicide bomber was able to enter and detonate explosives, killing Smith. n9

n9 Plaintiffs' Original Petition, PP 12-13, Exhibit A2 to defendants' Notice of Removal, Docket Entry No. 1.

On February 17, 2006, defendants filed a motion to dismiss the case for lack of subject matter jurisdiction pursuant to *Federal Rule of Civil Procedure 12(b)(1)*. n10 Defendants [*6] argued that the case should be dismissed as nonjusticiable under the political question doctrine, or, alternatively, dismissed under the Federal Tort Claims Act. The court declined to dismiss the case, concluding that the Federal Tort Claims Act combatant activities exception does not preempt the state tort law action, and that there was not a sufficient factual predicate to determine whether the case presents a nonjusticiable political question. n11 The court granted plaintiffs' request for discovery on the jurisdictional issue, and invited defendants to refile their motion for dismissal after completion of discovery. n12 Defendants have done so, filing a renewed motion to dismiss for lack of subject matter jurisdiction on political question grounds. n13

n10 Defendants' Motion to Dismiss Pursuant to *Rule 12(b)(1) of the Federal Rules of Civil Procedure*, Docket Entry No. 4.

n11 Memorandum Opinion and Order, Docket Entry No. 13.

n12 Id. at pp. 13-14.

n13 Defendants' Renewed Motion to Dismiss Pursuant to *Rule 12(b)(1) of the Federal Rules of Civil Procedure.*

[*7]
**II. Political Question**

Case 1:06-cv-01616-CKK    Document 10-3    Filed 10/26/2006    Page 3 of 8

Page 3
2006 U.S. Dist. LEXIS 61980, *

The political question doctrine is an aspect of "the concept of justiciability, which expresses the jurisdictional limitations imposed on the federal courts by the 'case or controversy' requirement" of Article III of the Constitution. *Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 94 S.Ct. 2925, 2929, 41 L. Ed. 2d 706 (1974).* Courts lack jurisdiction over political questions that are by their nature committed to the political branches. *Bancoult v. McNamara, 445 F.3d 427, 432 (D.C. Cir. 2006)* (quoting *Schneider v. Kissinger, 366 U.S. App. D.C. 408, 412 F.3d 190, 193 (D.C. Cir. 2005)*). See also *Occidental of UMM al Qaywayn, Inc. v. Certain Cargo of Petroleum, 577 F.2d 1196, 1203 (5th Cir. 1978).*

"The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. American Cetacean Society, 478 U.S. 221, 106 S.Ct. 2860, 2866, 92 L. Ed. 2d 166 (1986).* The following six tests determine the existence of a political question:

(1) [*8] a textually demonstrable commitment of the issue to a coordinate political department;

(2) a lack of judicially discoverable and manageable standards;

(3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;

(4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;

(5) an unusual need for unquestioning adherence to a political decision already made; and

(6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 710, 7 L. Ed. 2d 663 (1962).* These six tests "are probably listed in descending order of both importance and certainty." *Vieth v. Jubelirer, 541 U.S. 267, 124 S.Ct. 1769, 1776, 158 L. Ed. 2d 546 (2004).* The political question doctrine is not applied unless one of the six factors is "inextricable from the case at bar[.]" *Baker, 82 S.Ct. at 710.* In determining if a political question exists the court analyzes the claim "as it would be tried, to determine whether a political question will emerge." *Occidental, 577 F.2d at 1202.* [*9] n14

n14 The court may consider matters outside the complaint to resolve the jurisdictional issue. See *Barrett Computer Servs., Inc. v. PDA, Inc., 884 F.2d 214, 220 (5th Cir. 1989)* (stating that subject matter jurisdiction determinations may be made using any one of the following bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts).

In its previous opinion the court concluded that the central inquiry in the political question determination was who had responsibility for security at the DFAC, defendants or the United States military? n15 Defendants argue that the evidence produced demonstrates that the United States military was solely responsible for force protection at FOB Marez. n16 Plaintiffs respond that defendants have not submitted any new evidence in their Renewed Motion to Dismiss and therefore revisiting the court's previous opinion [*10] is unnecessary. n17 But a review of the pleadings reveals that defendants have submitted new evidence in the form of several sworn declarations and the relevant contract. The contract provides a factual framework with which the court can analyze the legal question. n18

n15 Memorandum Opinion and Order, pp. 9-10, Docket Entry No. 13.

n16 Defendants' Renewed Motion to Dismiss Pursuant to *Rule 12(b) (1) of the Federal Rules of Civil Procedure*, p. 8, Docket Entry No. 31.

n17 Plaintiffs' Response to Defendants' Renewed Motion to Dismiss, P 37, Docket Entry No. 34.

n18 Many of defendants' subpoena requests were denied by the Army and the Department of Defense, generally because the requested materials were classified. Exhibits N & O to Defendants' Renewed Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(1)*. De-

Case 1:06-cv-01616-CKK    Document 10-3    Filed 10/26/2006    Page 4 of 8

Page 4
2006 U.S. Dist. LEXIS 61980, *

spite this, the court is satisfied that the evidence obtained by defendants and submitted in their Renewed Motion to Dismiss is sufficient to determine whether or not this case constitutes a political question.

[*11]

The LOGCAP Contract and Task Order 59 serve as the principal legal bases for the relationship between the Department of Defense and the contractor. n19 No provisions of the LOGCAP Contract or Task Order 59 give defendants responsibility for providing force protection in the FOB Marez DFAC to defendants. Force protection is defined as "[s]ecurity programs designed to protect Service members, civilian employees, family members, facilities, information, and equipment in all locations and situations, accomplished through the planned and integrated application of combating terrorism, physical security, operations security, personal protective services, and supported by intelligence, counterintelligence, and security programs." n20

> n19 Department of Defense Instruction 3020.41, Contractor Personnel Authorized to Accompany the U.S. Armed Forces, P 6.1.4 (October 3, 2005).

> n20 Department of Defense Instruction 2000.16, DoD Antiterrorism Standards, Enclosure 2 P E2.1.7 (June 14, 2001).

Defendants have submitted [*12] a sworn declaration from the Administrative Contracting Officer responsible for oversight of the relevant contract stating that "[t]he Army retained the authority and responsibility for the 'security' and 'force protection' functions at FOB Marez and the Marez DFAC at all times under this contract; KBR was never entrusted with such 'security' or 'force protection' functions." n21 Instead, defendants' responsibility was to provide food services at the FOB Marez DFAC. Not only are defendants without force protection responsibilities, but the contract provides that the Service Theater Commander will provide force protection to defendants and their employees. n22

> n21 Declaration of Major Judy P. Anderson, P 7, Exhibit G to Defendants' Renewed Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(1)*. Plaintiffs object to the declaration, arguing that it constitutes an opinion as to the legal effect of a contract. Although it may contain a legal opinion, the court can determine the effect of the contract by reading it, and will consider the declaration because it is relevant insofar as it addresses the military's understanding of defendants' lack of force protection responsibilities.

[*13]

> n22 LOGCAP Contract, P H-16, and Task Order 59, Statement of Work P 1.10, Exhibit A to Defendants' Renewed Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(1)*.

In the absence of any contractual directive to provide security, the Army assigns responsibility for force protection, including security, to the military, not to civilian contractors. n23 As contractors, defendants are required to adhere to military guidance, instructions, and general orders issued by the Theater Commander including "any and all guidance and instructions issued based upon the need to ensure mission accomplishment, force protection, and safety[.]" n24 In addition, as contractors, defendants cannot "command, supervise, administer or control Army or Department of the Army Civilian (DAC) personnel." n25 Although contractors may be armed, they may only be armed for the purpose of individual self-defense. n26 The LOGCAP contract provides that the Theater Commander has discretion to allow contractors to carry government-issue firearms. n27 Defendants state that no [*14] such authorization was given to defendants at FOB Marez. n28

> n23 See DoD Instruction 2000.16, P E3.1.1.14.1 (June 14, 2001) ("Commanders shall maintain a comprehensive AT [anti-terrorism] program for those personnel and assets for which they have AT responsibilities"); Field Manual 100-21, Contractors on the Battlefield, P 6-3 (January 2003) ("Contractor employees cannot be required to perform force protection functions . . . and cannot take an active role in hostilities").

> n24 LOGCAP Contract, P H-13, Exhibit A to Defendants' Renewed Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(1)*.

> n25 Army Regulation 715-9, Contractors Accompanying the Force P 3-3(a) (29 October 1999).

Case 1:06-cv-01616-CKK    Document 10-3    Filed 10/26/2006    Page 5 of 8

Page 5
2006 U.S. Dist. LEXIS 61980, *

n26 DoD Instruction 3020.41, Contractor Personnel Authorized to Accompany the U.S. Forces, P 4.4.1 (October 3, 2005).

n27 LOGCAP Contract, P H-21, Exhibit A to Defendants' Renewed Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(1)*.

n28 Defendants' Renewed Motion to Dismiss Pursuant to *Rule 12(b)(1) of the Federal Rules of Civil Procedure*, p. 12, Docket Entry No. 31.

[*15]

Defendants' evidence also demonstrates that as a practical matter the military, not defendants, actually provided security at the DFAC. n29 This security took the form of periodically stationing soldiers to check identification of personnel entering the DFAC and ensuring that loaded weapons were not brought into the DFAC. n30 There were apparently no soldiers performing these functions on December 21, 2004, when the DFAC was bombed, or for the several days preceding the bombing. n31 Nor did the military provide defendants with any warning that the DFAC might be targeted for attack by a suicide bomber, or targeted for any attack at all on December 21, 2004. n32

n29 Declaration of Mark C. Hall, PP 5 & 6, Exhibit I to Defendants' Renewed Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(1)*.

n30 Id. at P 5.

n31 Id.

n32 Id. at P 7.

The evidence submitted establishes that defendants had no responsibility for force protection, notwithstanding [*16] plaintiffs' arguments to the contrary. The linchpin of plaintiffs' argument that defendants have force protection responsibilities as contractors is paragraph 6-4 of Field Manual 100-21, Contractors on the Battlefield, which states that "[t]he responsibility for assuring that contractors receive adequate force protection starts with the combatant commander, extends downward, and includes the contractor." n33 Plaintiffs attempt to characterize this as establishing a chain of command for force protection, starting with the combatant commander and extending downward to the contractors. But the full text of the cited paragraph does not support plaintiffs' argument. The entire paragraph states as follows:

n33 Field Manual 100-21, Contractors on the Battlefield, P 6-4 (January 2003), Exhibit F to Defendants' Renewed Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(1)*.

Protecting contractors and their employees on the battlefield is the commander's [*17] responsibility. When contractors perform in potentially hostile or hazardous areas, the supported military forces must assure the protection of their operations and employees. The responsibility for assuring that contractors receive adequate force protection starts with the combatant commander, extends downward, and includes the contractor. n34

n34 Id.

The first sentence of this document makes it clear that the intent is not to delegate force protection responsibilities to the contractor. Furthermore, the cited paragraph deals with protecting the contractors by military forces, not with requiring contractors to provide force protection to other parties. The last sentence ensures that contractors comply with force protection measures ordered by the commanders for their own benefit, such as using personal protective equipment and does not, as plaintiffs argue, demonstrate that the military delegated some of its force protection responsibility to defendants.

Plaintiffs also cite to a provision of Task [*18] Order 59 related to fire fighting services.

Task Order 59 of the LOGCAP contract requires that defendants

provide fire fighting protection services for U.S. Government owned or leased property, personnel and equipment on all Enduring Base Camps . . . The contractor shall provide fire department and fire protection functions according to DoD, local,

state, federal and industry standards. These functions include fire protection support, emergency response, equipment and vehicle management, fire prevention and education, and training. n35

n35 Task Order 59, Statement of Work, PP 8.18-8.18.1, Exhibit A to Defendants' Renewed Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(1)*.

Plaintiffs argue that fire fighting and prevention services include preventing a fire caused by a bomb explosion. n36 Reading fire prevention as broadly as plaintiffs suggest would bring this portion of Task Order 59 in unnecessary conflict with the contractual provisions [*19] requiring the United States government to provide force protection to contractor personnel. n37 In addition, the plain language of the contract belies plaintiffs' argument. The term "fire prevention" cannot reasonably be read to encompass prevention of infiltration or explosions caused by suicide bombers. Preventing suicide bomb attacks is more appropriately characterized as a force protection measure, contractually entrusted to the United States government and the military. Plaintiffs' arguments regarding the contractual provision that defendants shall be "responsible for the safety of employees and base camp residents during all operations in accordance with the Army and OSHA safety regulations and guidance" is similarly unavailing. n38 The reference to OSHA safety regulations indicates that "safety" in this provision is safety in the workplace, not security measures related to hostile forces.

n36 Plaintiffs' Response to Defendants' Renewed Motion to Dismiss, PP 60-62, Docket Entry No. 34.

n37 LOGCAP Contract, P H-16, and Task Order 59, Statement of Work, P 1.10, Exhibit A to Defendants' Renewed Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(1)*.

[*20]

n38 Plaintiffs' Response to Defendants' Renewed Motion to Dismiss, and Response to Defendants' Motion in the Alternative for Summary Judgment, PP 53-58, Docket Entry No. 34 (quoting Task Order 59, Statement of Work, P 1.2).

Plaintiffs couch this lawsuit in terms of simple premises liability by arguing that the court need only determine what duties defendants, as possessor, occupier, and operator of the DFAC, owed to Allen Keith Smith as the invitee. n39 This formulation fails to recognize that were the case to proceed, this court would have to second-guess the decisions of the United States military, even though the suit is ostensibly against only military contractors. Although the military contracted out the logistical aspects of FOB Marez's DFAC operations to defendants, it did not delegate the force protection responsibilities to defendants.

n39 Id. at P 65.

Another district court recently addressed the issue of [*21] how government contractors affect the political question doctrine. In *Whitaker v. Kellogg Brown & Root, Inc.*, -- F.Supp.2d --, 2006 U.S. Dist. LEXIS 45708, 2006 WL 1876922 (M.D. Ga. July 6, 2006), the surviving parents of a soldier serving in Iraq sued the government contractor after their son was killed while escorting a military supply convoy operated by the government contractor. *2006 U.S. Dist. LEXIS 45708, [WL] at *1*. Plaintiffs alleged that the defendant's drivers were negligent and that the defendant was negligent in hiring, training, and supervising those drivers. Id. The court dismissed the case on political question grounds despite the fact that the plaintiffs' allegations were against the civilian contractor. *2006 U.S. Dist. LEXIS 45708, [WL] at *3*. "When the military seeks to accomplish its mission by partnering with government contractors who are subject to the military's orders . . . the use of those civilian contractors to accomplish the military objective does not lessen the deference due to the political branches in this area." Id.

In this case the negligence allegations in plaintiffs' complaint directly address the security of the DFAC. Plaintiffs repeatedly argue that their complaint questions only the conduct of defendants [*22] in failing to provide security, not the military's force protection policies. But this argument fails because the evidence shows that defendants had no security responsibilities for the DFAC. By alleging that defendants were negligent in providing security for the DFAC at FOB Marez plaintiffs are, in effect, alleging that the military was negligent in providing security for the DFAC at FOB Marez.

Even assuming, arguendo, that the military and defendants had concomitant responsibility for security,

Case 1:06-cv-01616-CKK    Document 10-3    Filed 10/26/2006    Page 7 of 8

Page 7
2006 U.S. Dist. LEXIS 61980, *

defendants were still operating pursuant to the military's orders, instructions, and regulations. The Whitaker court held that an injury "at the hands of a contractor which is performing military functions subject to the military's orders and regulations also raises . . . political questions." *Whitaker, 2006 U.S. Dist. LEXIS 45708, 2006 WL 1876922 at *3*. This court agrees. Even if defendants had some responsibility for implementing force protection measures promulgated by the military, the court would still be called upon to examine the military's decision-making in many respects, including determining whether the military gathered adequate intelligence regarding the threat of terror attacks, [*23] whether it conveyed this threat to defendants, how the military planned for and implemented base access measures, and whether the implementation of force protection measures was reasonable when measured against the risk assessment level.

Examining plaintiffs' complaint in this light, the court concludes that the first three *Baker v. Carr* tests are inextricable from the case at bar. The Constitution textually commits the issues in this case to the political branches. Article II, § 2 of the United States Constitution appoints the President Commander in Chief of the armed forces. Article I, § 8 grants to Congress authority to raise and support Armies, to provide and maintain a Navy, and to make rules for the governing and regulation of the land and naval forces. Courts have found that "the political branches of government are accorded a particularly high degree of deference in the area of military affairs." *Aktepe v. United States, 105 F.3d 1400, 1403 (11th Cir. 1997)*. Allowing this action to proceed would require the court to substitute its judgment on military decision-making for that of the branches of government entrusted with this task. To determine whether [*24] the force protection in place was adequate the intelligence gathering, risk assessment, and security measures implemented by the military at FOB Marez would have to be examined. Because the suicide bomber managed to enter the base, the court would also have to examine base perimeter security. "The control of access to a military base is clearly within the constitutional powers granted to both Congress and the President." *Cafeteria & Rest. Workers Union v. McElroy, 367 U.S. 886, 81 S. Ct. 1743, 1746, 6 L. Ed. 2d 1230 (1961)*. Judicial review of such decisions would intrude onto critical areas reserved to the Legislative and Executive Branches of government by the Constitution.

Moreover, there exists a lack of judicially discoverable and manageable standards to resolve this case. In order to determine if defendants acted reasonably as possessor, occupier, and operator of the DFAC, the court would have to decide what constitutes reasonable security measures at a military base located in an area of Iraq subject to threats from hostile forces. The court would have to assess what intelligence had been gathered regarding potential threats and evaluate whether the security measures implemented [*25] were reasonable in light of the potential threats. Security measures on military bases balance the need for functionality and access with the need for force protection. In striking this balance the military must also allocate limited personnel and resources, with the need for security on base competing with mission requirements off base in Iraq as well as throughout the world. The court would have to determine if the military was reasonable in striking this balance. Courts lack the facts, expertise, and standards necessary to evaluate whether reasonable care was taken in these circumstances.

Finally, the issues in this case could not be resolved without an initial policy determination of a kind clearly for nonjudicial discretion. The court would substitute its judgment for that of the military on the issue of whether adequate force protection measures were in place. The court would also have to examine the military's policy of feeding soldiers by gathering them in one centralized location. Since the suicide bomber was apparently wearing an Iraqi uniform, the decision to allow Iraqi troops to dine in the DFAC would also be at issue. These are just a few examples of the many policy [*26] determinations that were involved in implementing force protection measures at the FOB Marez DFAC. "The complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches." *Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 2446, 37 L. Ed. 2d 407 (1973)*. Policy determinations involving force protection measures in a hostile area of Iraq are clearly not appropriate for judicial determination.

For the foregoing reasons, the court concludes that it lacks jurisdiction to hear this case because it constitutes a nonjusticiable political question.

### III. Plaintiffs' Motions to Compel Discovery and for Leave to Amend

Plaintiffs have requested that defendants be ordered to respond to plaintiffs' discovery request. n40 This request is **DENIED**. Plaintiffs received defendants' responses to their discovery requests on July 10, 2006, but waited until filing their response to Defendants' Renewed Motion to Dismiss on August 22, 2006, to complain about defendants' discovery production. n41 Plaintiffs had more than adequate time [*27] to file a motion to compel production prior to filing their response. Furthermore, the evidence adduced by defendants was sufficient to determine that this case is nonjusticiable on political question grounds.

n40 Plaintiffs' Response to Defendants' Renewed Motion to Dismiss, p. 25, Docket Entry No. 34.

n41 Exhibits A & B to Plaintiffs' Response to Defendants' Renewed Motion to Dismiss, Docket Entry No. 34.

Plaintiffs also request leave to amend their complaint after receipt of defendants' response. n42 *Federal Rule of Civil Procedure 15(a)* states that "leave to amend should be freely given when justice so requires." However, a district court can deny leave to amend when allowing the amendment would be futile. *Jamieson v. Shaw, 772 F.2d 1205, 1208 (5th Cir. 1985).* See also *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co., 195 F.3d 765, 771 (5th Cir. 1999)* ("A district court acts within its discretion [*28] when dismissing a motion to amend that is frivolous or futile."). The evidence clearly establishes that the military had primary responsibility for force protection. Furthermore, the court has already examined the case as if the military and defendants had concomitant force protection responsibilities and determined that the case would still present a nonjusticiable political question. Allowing further discovery or amendment in this case would be futile because amending the complaint would not alter the basic nature of the instant case and the nonjusticiable political questions involved. Plaintiffs' motion for leave to amend their complaint is therefore **DENIED.**

n42 Id.

### IV. Conclusions and Order

For the foregoing reasons, Defendants' Renewed Motion to Dismiss Pursuant to *Rule 12(b)(1) of the Federal Rules of Civil Procedure* (Docket Entry No. 31) is **GRANTED.**

**SIGNED** at Houston, Texas, on this 30th day of August, 2006.

SIM LAKE

UNITED STATES [*29] DISTRICT JUDGE