**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **WOOD,** )<br>)<br>    **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**DYNCORP, et al.** )<br>)<br>)<br>    **Defendants**. ) | Case No. 1:06-cv-1616 |

**PLAINTIFF'S OPPOSITION TO DYNCORP INTERNATIONAL FREE ZONE, LLC'S MOTION TO DISMISS FOR INSUFFICIENCY OF SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION**

I.    **Introduction**

Plaintiff Ronald Wood (hereinafter "Wood" or "Plaintiff"), by and through undersigned counsel, hereby opposes the Motion to Dismiss for Insufficiency of Service Process and Lack of Personal Jurisdiction (the "Motion") of Defendant DynCorp International Free-Zone, LLC ("DIFZ"). The Motion relates solely to DIFZ, not to Defendants DynCorp, DynCorp International LLC ("DI LLC"), or DynCorp International, Inc. Collectively, all Defendants, including DIFZ, are referred to herein as the "DynCorp Defendants".

For the reasons set forth below, this Court has personal jurisdiction over DIFZ and service of process was sufficient. In the alternative, Plaintiff seeks leave to re-serve DIFZ by and through DI LLC or as otherwise permitted by the Court.

DI LLC has submitted to the personal jurisdiction of this Court. Meanwhile its agent and wholly owned subsidiary, DIFZ, has filed the pending Motion. DIFZ's Motion to Dismiss should be denied based upon DIFZ's own contacts with

the District of Columbia and its parent's contacts with this jurisdiction. In part, DIFZ conducted business in the District of Columbia by and through DI LLC. Herein, Plaintiff sets forth the salient facts establishing that DIFZ was acting as a mere instrumentality of DI LLC. Those facts support personal jurisdiction over DIFZ in the U.S. courts.

## II.    **Statement of Facts**

As Plaintiff explains herein, DIFZ is nothing more than a shell company intended to insulate DI LLC from liabilities arising from the conduct of DynCorp personnel in Iraq. Those efforts must fail because of DynCorp's substantial contacts with the District of Columbia.

More specifically, DI LLC entered into a sizeable subcontract with Plaintiff's employer, Worldwide Network Service, Inc. ("WWNS"). A copy of that subcontract is attached hereto as Exhibit A (excluding exhibits); Deposition of Walter Gray at p. 25 (Exhibit B). The Buyer was identified as DI LLC and the subcontractor was WWNS. *See* Exhibit A at p. 2, ¶ 5.3, and Article 16. *See also* Answer of Defendants DynCorp, DI LLC and DynCorp International Inc. to Amended Complaint (hereinafter "Answer to Amended Complaint") at ¶ 8.[1]

Significantly, WWNS was situated *in the District of Columbia.* Exhibit A. Its sole office in the United States is in Washington, D.C. Declaration of Walter Gray, filed in *Krebs v. Gray* (S.D Tex.) (WWNS maintains only one office, and that is in the District of Columbia") (Exhibit C hereto.)

---

[1] For purposes of this Opposition alone, Plaintiff accepts as true certain specific admissions of the Defendants in their Answer to the Amended Complaint and in particular affidavits and declarations that are attached hereto and specifically cited herein.

Although DI LLC was the Buyer under the subcontract, Exhibit A specifically identified DIFZ as the entity to whom the invoices from WWNS should be sent by mail for "approval". Exhibit A at ¶ 11.4. According to the subcontract, WWNS was to send invoices to "Sanjay Wadhawani" of DIFZ in Dubai Internet City, UAE. *Id.* at ¶ 11.5. Payment was to be made to WWNS's bank account *in Washington, D.C.* via wire transfer. *Id.*

The prime contract of DI LLC involved the Civilian Police Program (CIVPOL) and the United States Department of State. Declaration of Reginald S. Bailey, Sr., filed in *WWNS v. DI LLC* litigation, at ¶ 3 (Exhibit D).    *See also* Answer to Amended Complaint at ¶ 14. Of course, the Department of State is situated in Washington as well. The prime contract was an extension of DI LLC's security contract No. DABV01-03-0027. Affidavit of Henry Miller, filed in *Potts v. DynCorp* litigation, at ¶ 3 (Exhibit E); *see also* Exhibit F (Declaration of David M. Moore at ¶ 5).    The total value of that prime contract with DI LLC exceeded Seven Million Dollars. Exhibit F at exhibit A thereto.

Plaintiff was seriously injured in an automobile accident arising from services provided under Exhibit A. The driver of the vehicle was employed by the DynCorp Defendants to service DI LLC's subcontract with WWNS. *See* Answer to Amended Complaint at ¶¶ 23, 49, 58. As employees of a DynCorp entity, the driver was performing services for DI LLC and its prime contract with governmental authorities. *Id.* at ¶ 76; DI LLC Answer to Interrogatories 6.c. and 17 (Exhibit G hereto) (driver "provided services to Defendant pursuant to the agreement between [DI LLC] and [DIFZ]"); ("On September 3, 2004, Mr. McCants performed services for Defendant DynCorp International LLC through

an employee leasing arrangement between Defendant DynCorp International LLC and DI-FZ").

Meanwhile, DIFZ was providing administrative services under the applicable contract and subcontract. It was operating as a mere department or branch of DI LLC. DI LLC was the contracting party and DIFZ was acting as an arm of the DI LLC's operations. DIFZ's connection to DI LLC is extensive. In part, DIFZ is a wholly owned subsidiary of DI LLC. Answer to Amended Complaint at 5, 15 (Defendants admit that "DynCorp International FZ-LLC is a wholly owned subsidiary of DynCorp International LLC"). The parent company, DI LLC, was intimately involved in the hiring and supervision of all employees of DIFZ. DI LLC reviewed resumes for prospective employees of DIFZ, including the particular driver in this case, James McCants. Deposition of Pascal Budge, produced by Defendants in this action, at p. 16 (cited pages are attached hereto as Exhibit H). DI LLC identified and recruited the driver as a prospective employee. *Id.* at p. 20. DI LLC hired a company to conduct pre-deployment training of new hires. *Id.* at pp. 22, 25. DIFZ's sole responsibility was to provide administrative support for the operations of DI LLC. *See, e.g.,* Exhibit F (Declaration of David M. Moore at ¶ 21) (DIFZ performed "labor and payroll services"). When asked what DIFZ does with respect to its employees, a DI LLC employee responded as follows: "**It's really a forward deployed or forward located administrative office providing human resource financial support or financial accounting and finance support for field programs.**" Exhibit H at p. 30 (bates stamped page 000206). In other words, DIFZ serves as a human

resources department of DI LLC.  *See also* Exhibit F (Declaration of David M.
Moore at ¶ 21) (DIFZ performed "labor and payroll services").

Admittedly, DIFZ has tried to create certain corporate formalities and
written contractual understandings with DI LLC.  However, the formalities belie
the truth.  The following testimony of Mr. Howard M. Hougen, a vice president,
secretary and deputy general counsel of DI LLC is particularly revealing:

> Q.    Essentially, DynCorp FZ leases its employees to DynCorp
> International; is that correct?
>
> A.    That's correct.
>
> Q.    Does DynCorp FZ perform any other activities for DynCorp
> International besides the leasing?
>
> A.    No, not really.  It would hire the employees, but that's not a – that's
> all part of the leasing.

Deposition of Howard Hougen, produced in this case by the Defendants, at pp
13-14 (Exhibit I hereto at bates stamped page 000187).  Of course, DI LLC has
attempted to document this allegedly formal relationship with a leasing
agreement, attached to the Motion as Exhibit 1, Attachment F.  However, that
document does not constitute evidence of an arms length relationship between
two independent entities.  To the contrary, that cursory agreement merely
establishes the pretextual nature of the relationship.  Therein, DI LLC agrees to
pay DIFZ $500.00 per month while, concurrently, DIFZ agrees to pay DI LLC the
same amount per month.  *See* Motion at Exhibit 1, Attachment F.  According to
interrogatory responses, only one person in Iraq was employed directly by DI
LLC for the Oil-for-Food Contract during the relevant time period, Mr. Henry S.

Miller, despite the enormity of the DI LLC's contract with the government.  DI LLC Answer to Interrogatory No. 4 (Exhibit G hereto).[2]

## III.    This Court Has Personal Jurisdiction Over DIFZ

In light of the foregoing circumstances, this Court may properly exercise personal jurisdiction over DIFZ based upon the subsidiary's own involvement with the WWNS agreement and the undisputed jurisdictional contacts of DI LLC. For purposes of ruling on the Motion, the Plaintiff is only required to establish a prima facie case that jurisdiction exists.  *Material Supply International, Inc. v. Sunmatch Industrial Co., Ltd.*, 62 F. Supp. 2d 13, 19 (D.D.C. 1999).  That burden has been met.

General and specific jurisdiction are justified under D.C. Code Ann. § 13-334 (2005) and D.C. Code Ann. § 13-423(a) (2005) based upon DIFZ's transacting business in the District of Columbia with respect to the WWNS subcontract, related activities, and other DI LLC operations.  For example, section 13-423(a)(1) of the District of Columbia long-arm statute expressly permits personal jurisdiction over a person who acts directly "or by an agent", as to a claim for which relief arises from the person's "transacting any business in the District of Columbia".  This provision allows for jurisdiction to the "fullest extent permissible under the Due Process Clause of the United States Constitution."  *Johnson-Tanner v. First Cash Financial Services, Inc.*, 239 F.

---

[2]      DI LLC made different representations to the government about its promised involvement on the ground.  In its "Quality Control Plan", DI LLC stated, in part: "We expect all DynCorp personnel, from the Corporate Base to the work location, from the Project Manager down to each employee, to maintain total quality awareness."  DI LLC Quality Control Plan, produced by Defendants in this case, at p. 10 (included within Exhibit F hereto).

Supp. 2d 34, 37 (D.D.C. 2003) (*citing Crane v. New York Zoological Society,* 894 F.2d 454, 455 (D.C. Cir. 1990)). A single act in the District of Columbia may be sufficient to constitute "transacting business". *Material Supply International, Inc. v. Sunmatch Industrial Co., Ltd.,* 62 F. Supp. 2d 13, 19 (D.D.C. 1999). A defendant does not ever need to be physically present in the District to satisfy this provision in the long-arm statute. *Id.* Similarly, a company may meet the requirements of Section 13-334 even though it is incorporated and headquartered elsewhere.

In this case, DIFZ transacted business in the District of Columbia with WWNS, a D.C.-based company. The DI LLC contract with WWNS expressly assigned certain responsibilities to DIFZ. *See* Exhibit A. Plaintiff was an intended beneficiary of that contractual relationship, at least to the extent that DI LLC and DIFZ were entrusted with tasks associated with hiring, training and supervision of employees to drive him throughout Iraq. Plaintiff's injuries arose from the acts and omissions of a DynCorp employee in connection with the WWNS subcontract. There is a discernible relationship between the District of Columbia and DIFZ, i.e., the contract between WWNS in Washington, D.C. and the DynCorp entities. DIFZ assumed responsibilities under that contract, is mentioned expressly in the contract, and allegedly employed the negligent driver in furtherance of the contract. The WWNS contract was substantial in character and monetary rewards. It was described with particularity in the Amended Complaint.

Jurisdiction over DIFZ is also appropriate based upon the jurisdictional contacts of DI LLC. In the Motion, DIFZ correctly surmises that personal

jurisdiction is also based upon the *alter ego* doctrine or similar principles of agency and instrumentality. *See* Memorandum in Support of Motion at p. 15.[3] The contacts of an affiliated corporation, i.e., DI LLC, may be used to extend the reach of this Court's jurisdiction over DIFZ. *See, e.g., Johnson-Tanner,* 239 F. Supp. 2d at 38. A local company's acts may be imputed to a foreign company when the two companies are alter egos of each other or lack separate personalities. *Id.* For example, the alter ego analysis requires the Court to evaluate "whether there is such a unity of interest and ownership that the separate personalities of [the two companies] effectively no longer exist" and "whether an inequitable result would follow...." *Id.* at 38.[4] The federal courts allow personal jurisdiction over one company based upon the contacts of another, related company. "[F]ormal separation of corporate identities [does] not create a constitutional barrier to exercising personal jurisdiction over a non-resident corporation whose affiliated corporation has a substantial nexus with the forum." *Hoffman v. United Telecommunications, Inc.,* 575 F. Supp. 1463, 1470 (D. Kan. 1983).

In this case, DI LLC and DIFZ share an overwhelming unity of interest, ownership and control. DIFZ is wholly owned by DI LLC. According to the

---

[3]     Courts actually apply four related analyses: the "agency" test; the "alter ego" test; the "instrumentality" test; and the "integrated enterprise" test. All four analyses essentially evaluate whether two companies have separate personalities. *Material Supply International, Inc.,* 62 F. Supp. 2d at 19.
[4]     Typically, courts use the aforementioned tests to extend jurisdiction to a foreign parent company based upon the contacts of the local subsidiary. The same legal principles certainly would apply to the reverse situation as well. In fact, the applicable principles are particularly compelling when the doctrine is being utilized to exercise jurisdiction over a wholly owned and dominated foreign subsidiary.

Motion, it was formed by DI LLC.  It shared overlapping directors.[5]  More importantly, DIFZ acts solely to advance the interests of the parent's business with governmental entities, including the U.S. Government.  It is clear that DI LLC directs and controls its wholly owned subsidiary as an administrative department in DynCorp's international operations. DIFZ's only responsibilities are ministerial and administrative.  All substantive decisions are assigned to the parent company, including hiring decisions. As such, DIFZ is really a shell that acts for the sole benefit if DI LLC and the latter's governmental contracts.  The subsidiary essentially serves as an overseas human resources and/or accounting office.  In part, the subsidiary acts as a mere division of DI LLC, depends on the parent for substantially all of its business, and operates exclusively in the interest of the parent. *See, e.g., Material Supply International, Inc.,* 62 F. Supp. 2d at 20 (setting forth facts considered pertinent to "mere instrumentality" analysis).  Such circumstances dictate a finding that DIFZ is a mere instrumentality of DI LLC.

To the extent that Defendants have submitted a contrary affidavit from John W. Supina, the credibility of such declarations should be disregarded for purposes of the jurisdictional decision.  Available evidence certainly contradicts Mr. Supina's assertion that "DI and DIFZ make their own independent marketing, operations, and hiring decisions."  Motion at Exhibit 1, Declaration at ¶12.  The evidence compels a contrary conclusion, i.e., that DI LLC makes all of the decisions because the operations relate to DI LLC's government contracts.

---

[5]    The Motion at Exhibit 1, Attachment E, sets forth a list of original directors of DIFZ.  That list includes, for example, Mr. Jay K. Gorman and Mr. Stephen J. Cannon. According to DI LLC's Form 10-K filings with the Securities and

When evaluating a Plaintiff's *prima facie* case concerning personal jurisdiction, courts must give the plaintiff the benefit of all factual doubt. *See, e.g., Johnson-Tanner*, 239 F. Supp. 2d at 37; *Hoffman.*, 575 F.Supp. at 1470. [6]

Although WWNS entered into the subcontract with DI LLC, it is clear that DIFZ was acting as an instrumentality and agent for DI LLC under the terms of that specific contractual relationship.

The equities also favor inclusion of DIFZ in this U.S. case. Although DI LLC should be held liable for all acts of its agents, including the negligent driver in this case, DI LLC undoubtedly will seek to avoid legal responsibility by citing the driver's alleged employment relationship with DIFZ. Clearly, the creation of DIFZ was a transparent effort to shield DI LLC from the acts of individuals who staff DI LLC's lucrative government contracts. The DynCorp Defendants should not be allowed to create corporate shells and, thereby, to avoid legal responsibility in the United States courts for serious injuries to U.S. citizens. The Defendants hire U.S. employees, such as the driver in this case, dispatch them to Iraq for services that are highly lucrative to the DynCorp Defendants and, then, seek to avoid all accountability in the United States for the conduct of such personnel abroad.

---

Exchange Commission, these gentlemen have served on multiple boards of the DynCorp entities, including DI LLC, for more than a decade. Exhibit J.

[6]    If this Court requires additional evidence to determine the exact relationship between DIFZ and DI LLC, then the Motion should be denied. The DynCorp Defendants have evaded and delayed relevant discovery responses regarding this precise issue. *See, e.g.,* Exhibit G hereto (answer to interrogatory 12); Exhibit K (answer to interrogatory 15; response to document production request 27).

In sum, the alter ego, mere instrumentality and agency doctrines apply to these circumstances and jurisdiction may be extended to DIFZ.  The contacts of DI LLC with the District of Columbia should be imputed to DIFZ and such contacts warrant this Court's exercise of personal jurisdiction.

## IV. DIFZ Was Served In Accordance With Rule 4(f)(2)(A)

DIFZ also challenges the sufficiency of Plaintiff's service of process.  DIFZ valiantly advances positions that would insulate it from service of process in any U.S. proceedings.  It maintains that personal service on a corporation in Dubai is prohibited by the Federal Rules of Civil Procedure.  Concurrently, DIFZ has submitted an affidavit stating that service by mail would be prohibited by the foreign law of the United Arab Emirates. In another proceeding involving the same automobile incident, DIFZ objected to service by mail upon DIFZ through a U.S. employee of DI LLC.  In that case, DIFZ criticized the other plaintiff for failing to serve DIFZ in Dubai's offices in accordance with Rule 4(f).  *See Potts v. Dyncorp International, LLC*, 2007 WL 899040 (M.D. Ala. 2007).[7]

In the pending Motion, DIFZ actually criticizes the Plaintiff for delivering the summons and complaint directly to DIFZ's Dubai headquarters.  Such service successfully placed DIFZ on actual notice of the litigation and provided the required papers to an agent of DIFZ.  The recipient of the papers was Sanjay Wadhwani, i.e., the same person identified in the WWNS contract with DI LLC. According to the Defendants, Mr. Wadhwani is DIFZ's "Finance Control

---

[7]     In that case, DIFZ complained that the plaintiffs had made "no attempt ... to serve DIFZ at its proper address outside of the United States or to apply the requirements of any applicable international agreements or Rule 4(h)(2) and 4(f)." *See* Exhibit L at p. 8.

11

Manager." Motion at Exhibit 2 (Affidavit of Rowena Robins at ¶ 5). DIFZ acknowledges receipt of the legal paperwork, including personal receipt of the unopened envelope by Mr. Wadhwani himself. Motion at Exhibit 4 (Affidavit of Sanjay Wadhwani). Plaintiff obtained a written acknowledgement of receipt from Mr. Wadhwani's assistant. Motion at Exhibits 2 and 3.

Rule 4 of the Federal Rules of Civil Procedure is a "flexible rule that should be liberally construed to uphold service as long as a party receives sufficient notice of the complaint." *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1404 (9th Cir. 1994), *cert. denied,* 514 U.S. 1004 (1995).

Contrary to the assertions of DIFZ, the Federal Rules permit service by hand to an agent for a foreign corporation in the United Arab Emirates. More particularly, Rule 4(f)(2)(A) allows service "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction". Fed. R. Civ. P. 4(f)(2)(A). To the extent that a foreign country allows service upon a corporation by hand, Rule 4(h)(2) does not prohibit such service. Instead, the alleged prohibition against personal service set forth in Rule 4(h)(2) would only apply if service is premised upon Rule 4(f)(2)(C). This interpretation of the Rules was adopted in *Ryan v. Brunswick Corporation*, 2002 WL 1628933 (W.D.N.Y. 2002). That court held that personal service was permitted under Rule 4(f)(2)(A) if Taiwanese law allowed such manner of service on a foreign corporation. "The proscription against personal service on a foreign corporation in FRCvP 4(h)(2) is expressly limited to service under FRCvP 4(f)(2)(C) – not service under FRCvP 4(f)(2)(A)." *Id.* at n.5. Where a foreign country's law permits hand delivery, Rule 4(f)(2)(A) governs. When the foreign

12

law prohibits such service, Rule 4(f)(2)(C) applies. *Id. See also Cosmetech International, LLC v. Der Kwei Enterprise and Co., Ltd,* 943 F.Supp. 311 (S.D.N.Y. 1996).

Significantly, DIFZ's Motion asserts that the United Arab Emirates requires personal service and actually prohibits service by mail. *See* Motion at Exhibit 6 (Affidavit of Gloria Estolano) at ¶¶ 5, 6. Although Plaintiff could have opted for service through diplomatic channels, he was not required to do so. *Id.* DIFZ says that the "usual manner" of service in Dubai is through a Dubai lawyer, but there is no indication that such procedures are required. *Id.*[8]

Plaintiff complied with the requirements of local law by hand-delivering the summons and complaint to DIFZ's management center in Dubai. DIFZ has not challenged the address where the package was delivered. Instead, the Defendant vaguely suggests that Mr. Wadhwani was not an appropriate recipient of the papers. This argument is flawed because the cited law permits service upon office staff. Of course, DIFZ has never identified the "correct" recipient of the summons and complaint.

Finally, DIFZ complains that the papers were not translated in writing into Arabic by the Arabic-speaking person who delivered the documents to DIFZ. Any such requirement is inapplicable and unreasonable here. Rule 4(f)(2)(A) of the Federal Rules of Civil Procedure only addresses the "means" of service that are "reasonably calculated to give notice". Fed. R. Civ. P. 4(f)(2)(A). On its face,

---

[8]    DIFZ does not attach a full set of the applicable laws. Instead, it selectively quotes and characterizes the provisions.

the Rule prescribes the "manner" of permissible service, not the format, content or language of the papers.

In any event, any alleged translation requirement would be inapplicable here. Plaintiff did not initiate a complaint in any court within the United Arab Emirates (U.A.E.) and, as such, Article 4 of the U.A.E. Civil Procedure Code should not apply. Significantly, DIFZ has not been prejudiced by the language of the Complaint. DIFZ's personnel clearly speak English. DIFZ enters into written contracts that are in English, including the leasing agreement with DI LLC. DIFZ is wholly owned by a United States company. When DIFZ was formed, five of its seven directors were situated in the United States and another was located in Germany. Motion at Exhibit 1, Attachment E.

In sum, DIFZ was properly served with process in this case.

**V.    This Case Should Not Be Dismissed If Service Was Insufficient**

Even if this Court finds that service upon DIFZ was deficient, then dismissal of DIFZ would not be warranted. By its own admission, DIFZ has known about this proceeding since at least March 29, 2007. DIFZ has suffered no prejudice to date.

Instead of dismissal, Plaintiff should be allowed to serve DIFZ through DI LLC or as directed by the Court pursuant to Rule 4(f)(3). As Plaintiff has explained above, DI LLC and DIFZ lack any legitimate separate existence. They are a common instrumentality serving only DI LLC's needs and objectives. Under such circumstances, DIFZ is subject to service of process by and through its agent, DI LLC. *See Potts v. DynCorp International, LLC,* 2007 WL 899040 (ruling that service of process issues could not be resolved without an evidentiary

14

hearing to determine if DIFZ and DI LLC are alter egos and instrumentalities of each other).

## VI.    Conclusion

For the foregoing reasons, the Motion should be denied.   A proposed order is attached.

Respectfully submitted,

FINKELSTEIN & HORVITZ, P.C.

By:_____/s/_____
Nathan I. Finkelstein (D.C. Bar No. 173682)
Laurie B. Horvitz (D.C. Bar No. 384702)
Robert J. Goldman (D.C. Bar. No. 481642)
7315 Wisconsin Avenue, Suite 400 East
Bethesda, MD 20814
(301) 951-8400
**_Counsel for Plaintiff Ronald Wood_**

15

## CERTIFICATE OF FILING

I hereby certify that a copy of the foregoing Opposition and proposed order were filed electronically on July 11, 2007. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system, including the following counsel:

Robert B. Wallace (D.C. Bar No. 108571)
Kevin P. Farrell (D.C. Bar. No. 492142)
Yoora Pak (D.C. Bar No. 467007)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
1341 G Street, N.W.
Suite 500
Washington, DC 20005
202-626-7660

George D. Ruttinger (D.C. Bar No. 214445)
Amy Laderberg O'Sullivan (D.C. Bar No. 474973)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
202-624-2500


                                    /s/
                                    _____
                                        Laurie B. Horvitz

16

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| WOOD,      )<br>           )<br>      Plaintiff,   )<br>           )<br>v.             )<br>           )<br>DYNCORP, et al.   )<br>           )<br>      Defendants.   )<br>           ) | Case No. 1:06-cv-1616 |

## **List of Exhibits**

Exhibit A      Subcontract Between DynCorp International and Worlwide Network Services, Inc.

Exhibit B      Deposition of Walter Gray, pages 1, 4, 6 and 25

Exhibit C      Declaration of Walter Gray

Exhibit D      Declaration of Reginal S. Bailey, Sr.

Exhibit E      Affidavit of Henry M. Miller

Exhibit F      Declaration of David M. Moore and Exhibit A thereto

Exhibit G      Defendant DynCorp International LLC's Answers to Interrogatories to Plaintiff, pages 5, 6, 11, 12, 13, 15, 16

Exhibit H      Deposition of Pascal Budge, bates stamped pages 193, 195, 199, 200, 201, 202, 204, 206,

Exhibit I      Deposition of Howard M. Hougen, bates stamped pages 182, 184, 185, 187, 199, 200, 201, 202, 204, 206, 215

Exhibit J      U.S. SEC Form 10-K, DynCorp International LLC, selected pages

Exhibit K      Defendant DynCorp International, LLC's Responses to Plaintiff's Interrogatories, pages 1, 12, 15, 21, 22 and Defendant DynCorp International LLC's Responses to Plaintiff's Requests for Production of Documents, pages 1, 16, 23

Exhibit L      Preliminary Motion to Dismiss for Insufficiency of Process and Lack of Personal Jurisdiction, Potts v. DynCorp et al, pages one, 2, 8, 15, 16