# Exhibit A

# SUBCONTRACT

# NUMBER

# WWNS04-001-CIV

Between

**DynCorp International,**
**A CSC Company**
**One Ridgmar Centre**
**6500 West Freeway, Suite 600**
**Fort Worth, TX 76116**

And

**Worldwide Network Services, Inc.**
**1130 Connecticut Ave. NW, Suite 425**
**Washington, DC 20036**

DEPOSITION EXHIBIT #1 GRAY 6-8-07

WWNS04-001
16 February 2004

Page 1 of 44

DynCorp
WWNS

Defendant 000057

831

This Subcontract is entered into by and between:

(1) **DYNCORP INTERNATIONAL LLC**, a wholly owned subsidiary of CSC established under the laws of Delaware and whose registered address is at One Ridgmar Centre, 6500 West Freeway, Fort Worth, Texas 76116 (hereinafter called DynCorp or Buyer); and

(2) **WORLDWIDE NETWORK SERVICES, INC.**, a company incorporated under the laws of Delaware whose address is 1130 Connecticut Ave. NW, Suite 425, Washington, DC (hereinafter called WWNS or Subcontractor).

(3) DynCorp and WWNS may be herein referred to individually as the "Party" or collectively as the "Parties".

This is an Indefinite Delivery/Indefinite Quantity Subcontract issued in support of the Buyer's Prime Contract S-LMAQM-04-0030, Civilian Police Program (CIVPOL) with the United States Department of State.

## THE PARTIES HERETO AGREE

### ARTICLE 1.
### SUBCONTRACT TERM, EFFECTIVITY, AND CONTENT

The term of this Subcontract is one base period of one (1) year, with four one year Option(s):

| | |
|---|---|
| **Base Period:** | 18 February 2004 through 17 February 2005 |
| **Option Periods:** | |
| 1 | 18 February 2005 through 17 February 2006 |
| 2 | 18 February 2006 through 17 February 2007 |
| 3 | 18 February 2007 through 17 February 2008 |
| 4 | 18 February 2008 through 17 February 2009 |

This Subcontract consists of these Articles and Exhibits A through C, attached hereto.

    Exhibit A-Statement of Work
    Exhibit B-CLIN Schedule
    Exhibit C-CIVPOL Flow-Down Requirements

## ARTICLE 2.
## CONTRACT VALUE

Values will be established for individual Task Orders as they are issued. Task Orders may be negotiated, awarded, and issued as Firm Fixed Price, Time & Material, Fixed Rate, Cost Reimbursable, or a combination of types. Buyer is obligated to pay for only the amounts stated on each individual Task Order issued under this Subcontract.

## ARTICLE 3.
## ORDER OF PRECEDENCE

Any inconsistency in this Subcontract shall be resolved by giving precedence in the following order:

A. The Articles
B. The Task Order/s
C. The Statement of Work

## ARTICLE 4.
## INTERPRETATION OF SUBCONTRACT

4.1   It shall be the obligation of the Subcontractor to exercise due diligence to discover and to bring to the attention of the Buyer, at the earliest possible time, any ambiguities, discrepancies, inconsistencies, or conflicts in or between any of the technical or contractual provisions hereof.

4.2   Any ambiguity, discrepancy, inconsistency or conflict in or between any of the technical or contractual provisions hereof shall be resolved by applying the most reasonable interpretation under the circumstances, giving full consideration to the intentions of the parties at the time of subcontracting.

## ARTICLE 5.
## SUBCONTRACTOR CONTACTS WITH BUYER'S
## CUSTOMER AND OTHER SUBCONTRACTORS

Buyer shall be responsible for all liaison and communications with its customer and other subcontractors for the term of this Subcontract. The Subcontractor shall not communicate with Buyer's customer or other subcontractors regarding this Subcontract unless otherwise expressly authorized in writing by the Buyer. If the Subcontractor receives a request for information regarding this Subcontract from Buyer's customer or other subcontractors, the Subcontractor is to notify the Buyer immediately.

## ARTICLE 6.
### REQUIREMENTS

6.1     This is an Indefinite Delivery/Indefinite Quantity Subcontract for which Task Orders will be issued defining the types, quantities, and performance periods of the work described in Exhibit A. These services and commodities shall be provided in accordance with all local, state, federal and international laws that may be applicable to such services and commodities. Prices for labor, materials, supplies and services shall be negotiated separately for each Task Order.

6.2     Delivery or performance shall be made only as authorized by Task Orders issued in accordance with Article 7, "ORDERING", of this Subcontract. The Subcontractor shall furnish to Buyer those services specified in Exhibit A "Statement of Work" and called for by the issuance of Task Orders in accordance with the ORDERING article of this Subcontract. Buyer may issue Task Orders requiring delivery of services on multiple performance schedules.

6.3     Buyer will order from the Subcontractor services and supplies as required to perform the work in Exhibit A. Buyer is not obligated to place any orders under this Subcontract.

## ARTICLE 7.
### ORDERING

7.1     All services to be furnished under this Subcontract shall be ordered by issuance of written Task Orders by the authorized individuals listed below:

**Sr. Director, Contract Administration, Timothy J. Crawley**
**Manager, Contract Administration, David M. Moore**
**Business Manager, Phil Warr**

Or other persons designated by the DynCorp Vice President, Contract Administration:

If the Subcontractor accepts orders or directions from other than the authorized individuals listed above, it does so at its own risk. Payment will be made only for services performed pursuant to the specific direction of the authorized individuals listed above. Accordingly, concurrent with or prior to the issuance of Task Orders, Buyer shall provide Subcontractor with a writing that identifies those individual(s) who have been designated as indicated above. Subcontractor shall be entitled to rely on such designation until Buyer shall revoke same, in writing.

7.2     All Task Orders issued under this Subcontract shall be subject to the terms and conditions of this Subcontract and its exhibits.

7.3     Buyer will issue a Statement of Work (SOW) for each Task Order. Subcontractor shall provide a separate proposal for each SOW. Subcontractor shall identify the effort in accordance with the exhibit B "CLIN Schedule". Individual Task Orders may also establish SubCLINs to further define cost elements. The Subcontractor's proposal shall include an invoicing schedule

for Task Orders that are Firm Fixed Price. The parties' agreement to any rates, costs, or fees for one SOW or Task Order shall not be deemed to constitute agreement to the same rates, costs or fees for any other SOW or Task Order. Upon completion of negotiations, Task Orders shall be issued at a value of the Firm Fixed Price or the Not To Exceed (NTE) for Cost type elements, the final negotiated price for that order. Issuance of the Task Order shall constitute authorization for the Subcontractor to proceed with the work defined therein.

7.4   If mailed, sent electronically, or faxed, a Task Order is considered "issued" when Buyer deposits the Task Order in the mail or the Subcontractor receives the faxed or electronic copy.

7.5   Task Orders may be issued verbally by authorized individuals and be confirmed in writing. In the case of verbal Task Orders, the Task Order is considered "issued" when the Subcontractor receives the Task Order number verbally from the authorized individual.

7.6   Any Task Order issued during the term of this Subcontract and not completed within the Subcontract term shall be completed by the Subcontractor within the time specified in the Task Order. This Subcontract shall govern the Subcontractor's and Buyer's rights and obligations with respect to that Task Order to the same extent as if the Task Order were completed during the term of the Subcontract.

## ARTICLE 8.
## OPTION TO EXTEND THE TERM OF THE CONTRACT

This Subcontract may be extended at the option of the Buyer for one or more of the option periods specified in Article 1 upon preliminary written notice to the Subcontractor at least 15 business days prior to expiration of the current performance period. The preliminary notice of intent to exercise the Option does not obligate Buyer to actually exercise the Option. The Subcontractor agrees to continue performance of work under this Subcontract for the option periods and any other Subcontract extensions pursuant to the same terms and conditions of this Subcontract.

## ARTICLE 9.
## TERMINATION

9.1 **Termination for Convenience.** Buyer reserves the right, at any time, in its own best interest, and without liability, to terminate this Subcontract or any order issued thereunder, in whole or in part, by written notice of termination for convenience to Subcontractor. Subcontractor shall submit a claim for equitable adjustment within thirty (30) business days of receipt of the termination notice. If the termination involves only services, Buyer shall be obligated to pay only for services performed through the termination date, plus reasonable costs of complying with the termination notice, including without limitation, payment for all outstanding orders placed prior to Subcontractor's receipt of the termination notice that could not be canceled, any associated cancellation charges, restocking charges, etc., plus reasonable administrative costs to

WWNS04-001         Page 5 of 44         DynCorp
16 February 2004                        WWNS

Defendant 000061

prepare the claim. Subcontractor shall provide Buyer any supporting information necessary to document the reasonableness of Subcontractor's claim.

9.2 **Termination for Default.** Buyer may, without liability, and in addition to any other rights or remedies provided herein or by law, terminate this Subcontract or any order issued thereunder, in whole or in part by written notice of default if Subcontractor: (a) fails to deliver the supplies or perform the services within the time specified; (b) fails to make sufficient progress with the work, thereby endangering completion of performance within the time specified; or (c) fails to comply with any of the other material instructions, terms, or conditions of the Subcontract. Buyer's right to terminate for default may be exercised if Subcontractor does not cure the failure within ten (10) business days after receiving Buyer's notice of such failure. If the default cannot be cured within 10 business days through no fault of Subcontractor, the Parties may seek other solutions and Subcontractor will not be subject to termination for default. If Buyer terminates this Subcontract in whole or in part, Buyer may purchase similar supplies or services from others and Subcontractor shall be liable for any additional costs above the original price for the terminated supplies/services. Provided, however, that Subcontractor's liability shall be conditioned on Buyer's exercise of good faith, reasonable effort to purchase such similar supplies or services at the same price and upon the same terms. In the event of a partial termination, Subcontractor shall continue the work not terminated. Subcontractor shall not be liable for any additional costs if failure to perform arises from causes beyond Subcontractor's or Subcontractor's subcontractor's control and without fault or negligence of either of them; provided, however, that the supplies/services to be furnished by Subcontractor's subcontractor (at any tier) were not obtainable from others in time for the Subcontractor to meet the delivery requirements; and, if the failure upon which the termination for default was premised arose from such causes, the termination shall be converted to one for convenience. Buyer shall pay Subcontractor the order price for any completed supplies/services delivered and accepted. Buyer and Subcontractor shall agree on the amount of payment for manufacturing materials delivered and accepted by the Buyer. Buyer may withhold from any payments due Subcontractor, a sum necessary in order to protect Buyer against any liability or expenses due to the termination for default, not to exceed 15% of the payment due. Subcontractor shall provide any supporting information necessary to document the reasonableness of Subcontractor's termination for default claim.

## ARTICLE 10.
## GENERAL TERMS AND CONDITIONS

10.1  Applicable Law. This Subcontract shall be governed by and construed in accordance with the laws of the state of Delaware.

10.2  Compliance with Laws. Subcontractor warrants and certifies that in the performance of this Subcontract, it will comply with all applicable statutes, rules, regulations, and orders of the federal, state or local governments applicable hereto. Subcontractor agrees to indemnify Buyer against any loss, costs, damage, or liability incurred by reason of Subcontractor's violation of this

WWNS04-001  
16 February 2004

Page 6 of 44

DynCorp  
WWNS

Defendant 000062

836

Section.

### 10.3 Ethical Standards of Conduct.

10.3.1  Subcontractor hereby represents that it has neither received nor given any gifts or gratuities, nor participated in any other unethical conduct as defined in the Procurement Integrity Provisions of the Office of Federal Procurement Policy (OFPP) Act, in connection with this Subcontract. If, at any time, Buyer determines that Subcontractor is in violation of the foregoing representation, Buyer may cancel this Subcontract upon written notice to Subcontractor and Buyer shall have no further obligation to Subcontractor beyond payment for services and supplies delivered through the date of termination. The parties hereto further agree that any breach of this representation by Subcontractor shall be a material breach of each and every Subcontract between Buyer and Subcontractor and Buyer shall have, in addition to all contractual remedies, all remedies available at law or in equity.

10.3.2  Subcontractor hereby represents and warrants that it will faithfully perform its services in a fully professional manner and shall not engage in any activity or course of conduct that would be reasonably likely to bring the name of Buyer into disrepute, or cause Buyer or its affiliates to be in violation of or subject to loss or reduction of benefits under any law or regulation of the United States of America.

10.3.3  Specifically, but not by way of limitation of the foregoing, Subcontractor hereby agrees and warrants that:

10.3.3.1 Subcontractor will perform in accordance with all applicable laws, including the U.S. Foreign Corrupt Practices Act, and Subcontractor shall make no payments, gifts, or other disbursements of any type in connection with the performance of the Subcontract which are contrary to the laws of the United States, Subcontractor's country, or the designated foreign country;

10.3.3.2  Except for Subcontractor's assignment of its rights to any payments or claims in connection with financing arrangements between Subcontractor and a financial institution, no person, firm, or entity other than Subcontractor has or will have the right to any fees paid or payable to Subcontractor under this Subcontract by virtue of any agreement, promise or understanding with Subcontractor;

10.3.3.3  If so requested by Buyer, Subcontractor agrees to communicate to auditors and/or counsel of Buyer that they have faithfully observed and have not violated any provision of this Article 10.3.3.

10.3.3.4  Violation of this paragraph shall constitute grounds for withholding payment(s) due the Subcontractor and shall constitute grounds for termination of this Subcontract.

10.4 **Assignment/Subcontracting.** Subcontractor shall not assign this Subcontract, or any rights, interest, or payments, or the performance of any of its duties under this Subcontract without the prior written consent of Buyer, provided, however, that such consent shall not be required with respect to Subcontractor's assignment of its rights to any payments or claims in connection with financing arrangements between Subcontractor and a financial institution. except for standard commercial items, raw materials, or other supplies identified in Subcontractor's proposal as procured from others, Subcontractor shall not subcontract the complete or any substantial portion of the work without the prior written consent of Buyer. Any attempted or purported assignment/subcontracting by Subcontractor without Buyer's prior written consent in violation of the terms of this paragraph shall be void and not binding upon Buyer.

10.5. **Information Disclosed to Buyer.** Any information or knowledge Subcontractor discloses to Buyer regarding this Subcontract shall not be deemed confidential or proprietary unless expressly agreed upon by the parties in writing. Any such unpatented information or knowledge shall be acquired by Buyer free of any restrictions.

10.6 **Warranty of Supplies/Services.** Subcontractor warrants that all supplies/services furnished under this Subcontract shall conform to the Buyer's specifications or other description and will be of good material and workmanship and free of defects. Subcontractor further warrants that the supplies/services will meet Subcontractor's published specifications and standards, will be new (not used or reconditioned), merchantable and suitable for the purpose intended and specified by Buyer. These warranties shall survive inspection, acceptance, and payment. Supplies/services that do not conform to the above warranties may, at any time within twenty-four (24) months after delivery to Buyer, be rejected and returned to Subcontractor, at Subcontractor's expense, for correction or replacement. If Subcontractor does not correct or replace same within ten (10) business days of Subcontractor's receipt of Buyer's rejection, Buyer may correct or replace the nonconforming supplies/services at Subcontractor's expense. The forgoing warranties are in addition to all other warranties expressed or implied by law including incidental or consequential damages.

10.7 **Price Warranty.** Subcontractor warrants that the price(s) charged for the supplies/services specified in this Subcontract are equal to or better than the selling price(s) Subcontractor charges its most favored customer for the same or substantially similar items, whether sold to the Government or to any other purchaser, taking into account the quantity purchased and terms and conditions of sale. Subcontractor further agrees that in the event of an announced priced reduction prior to complete shipment of supplies or performance of services, said price reduction shall be passed on to Buyer for supplies remaining to be shipped or services still to be performed.

10.8 **Changes.** By written modification, Buyer may, from time to time, order work suspension or make changes in specifications to services furnished by Subcontractor. If any such change causes an increase or decrease in the price of this Subcontract or in the time required for its performance, Subcontractor shall promptly notify Buyer thereof and submit its proposal for adjustment within 20 business days after the change is made. However, nothing in this provision shall excuse Subcontractor from proceeding immediately with the modification as changed.

WWNS04-001
16 February 2004

Page 8 of 44

DynCorp
WWNS

Defendant 000064

838

Whether made pursuant to this provision or by mutual agreement, changes shall not be binding upon Buyer except when specifically confirmed in writing by Buyer. Information, advice, approvals, or instructions given by Buyer's technical personnel or other representative shall be deemed expressions of personal opinions only and shall not affect Buyer's and Subcontractor's rights and obligations hereunder unless set forth in writing and signed by Buyer's authorized representative and which expressly states that it constitutes an amendment or change to this Subcontract

10.9 **Disputes.**

10.9.1 Subcontractor shall submit any claims for adjustment in the Subcontract for changes directed or required by the Government or additional costs that result from acts or omission of the Government in writing in such time so that Buyer shall have a reasonable amount of time to review the claims and submit it to the Government, all as the Prime Contract may require to permit Buyer to comply with the applicable provisions of the Prime Contract with respect to submission of claims by Buyer to Government. Buyer shall process such claims as projected in the Prime Contract. Subcontract adjustments shall be made only to the extent that Buyer obtains adjustments from the Government, and the amount of the Subcontract adjustment shall be equal to and not exceed Subcontractor's allocable share of the adjustment to the Prime Contract by the Government. Nothing in this article 10.9.1 shall be deemed to permit or allow the Subcontractor to take direction from the Government without Buyer's prior consent, nor shall it be deemed to create any privity between Subcontractor and the Government.

10.9.2 Any disputes arising out of or relating to this Subcontract and which are not covered by the preceding paragraph and are not resolved after a mutual, good faith effort shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules in force at the time the dispute arises, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

10.9.3 Notwithstanding any claim, dispute or other matter in question, Subcontractor shall continue to perform Subcontract Work, and Buyer shall continue to make payments due for all sums that are not in dispute.

10.10 **Stop-Work Order.** Buyer may, at any time, by written notice to Subcontractor, stop all or any part of the work hereunder for up to ninety (90) calendar days. Upon receiving a stop-work order, Subcontractor shall immediately comply with its terms and take all reasonable steps to avoid incurring any additional costs allocable to such work. If the stop work order results in an increase in price or schedule, the Subcontractor shall be entitled to recover such increased price and extension of the schedule, and must submit a claim for equitable adjustment within thirty (30) calendar days after the resumption of work or, if absent such resumption, the thirtieth calendar after its receipt of the stop work notice.

## ARTICLE 11.
## PAYMENT AND INVOICING

11.1 The Subcontractor shall be paid for performance hereunder in accordance with the terms of payment of this Subcontract, upon submission of proper invoices and Buyer approval. The payment terms are Net 45 days from (a) Buyer receipt of Subcontractor invoice and (b) delivery of acceptable services (see Article 12 herein).

11.2 Each Task Order shall be invoiced in accordance with the terms and payment schedule established in the Task Order. The parties' agreement to any rates, terms, costs or fees for one Task Order shall not be deemed to constitute agreement to the same rates, costs or fees for any other Task Order.

11.3 The Subcontractor shall invoice monthly and separately against each Task Order issued. Each invoice shall reference the Subcontract and Task Order number, applicable CLIN, quantity provided, rate per labor classification, total current invoice amount, and cumulative billings to date.

11.4 The original and one (1) copy of each invoice shall be submitted by mail for approval to the following:

> DynCorp International FZ-LLC
> Bldg. No. 15, Suite 105
> P.O. Box 500367
> Dubai Internet City, UAE
> Attn: Sanjay Wadhwani

> And

One (1) copy of each invoice shall be submitted by fax or mail for approval to the designated representative for acceptance of services as identified in the Task Order

11.5 Terms of payment are net 45 days. Payments shall be made electronically to Subcontractor's account, and shall be deemed "paid" when received in the account:

> Worldwide Network Services
> 1130 Connecticut Ave. NW Suite 125
> Washington DC 20036
> Branch - Citibank, Washington DC
> Account # 15236137
> ABA# 254070116

WWNS04-001
16 February 2004

Page 12 of 44

DynCorp
WWNS

Defendant 000068

840

11.6    Discrepancies in invoices may result in a delay of payment pending resolution of discrepancy(s).

## ARTICLE 12.
## ACCEPTANCE

Acceptance of services on each Task Order shall be made by the Program Manager or Business Manager, or their designated representatives.

## ARTICLE 13.
## SEVERABILITY

If any provision or portion thereof of this Subcontract is held to be invalid under any applicable statute or rule of law, it shall be, to that extent, deemed omitted without invalidating the remaining portions of this Subcontract.

## ARTICLE 14.
## WAIVER

Any failure on either party's part to carry out any condition, requirement, term or part of this subcontract shall not act as a waiver with respect to any recurrence of such failure, or with respect to a failure to carry out any other condition, term or part. The Buyer shall not be deemed to have waived any condition, requirement, term or part hereof unless such waiver is in writing.

## ARTICLE 15.
## MODIFICATIONS AND NOTICES

15.1    No oral statement of any person shall modify or otherwise affect the terms, conditions, or specifications stated in this Subcontract. Sole authority to issue change orders and modifications to this Subcontract is vested in the authorized negotiators designated in paragraph 15.2. below.

15.2    Authorized Negotiators:  Vice President, Business Management, Michael J. Thorne
                                 Sr. Director, Contracts Administration, Timothy J. Crawley

15.3 Any notices to be furnished by either party shall be sent as follows:

**To Buyer:**

DynCorp International LLC
8445 Freeport Parkway, Suite 400
Irving, TX 75063-2522
Attention: Contract Manager CIVPOL

**To Subcontractor:**

Worldwide Network Services, Inc.
1130 Connecticut Ave NW, Suite 425
Washington, DC 20036
Attn: Walter Gray, President

Either party may change its address for notice by providing written notice to the other party, in accordance with this sub article.

## ARTICLE 16.
## SUBCONTRACT CLAUSES

EXHIBIT C incorporates and includes government flow-down clauses by reference, with the same force and effect as if they were given in full text. Whenever the word "U.S. Government" is stated as the Buyer, substitute the word "DynCorp" or "Buyer". For the word "Contracting Officer", substitute "Buyer" or "Buyer's Representative". Whenever the word "Contractor" is stated as the Seller, substitute the word "WWNS" or "Subcontractor".

## ARTICLE 17.
## ENTIRE AGREEMENT

This Subcontract constitutes the entire agreement between Buyer and Subcontractor regarding this procurement and supersedes all previous written or oral agreements and commitments. No terms or conditions of sale set forth in Subcontractor's quotation or acknowledgment shall be included as a part hereof, nor shall any prior course of dealing, custom, or usage in the trade supersede or modify any Task Order provisions. Any subsequent additions, deletions or modifications to this agreement shall not be binding upon the parties unless same are mutually agreed upon and incorporated herein in writing.

WWNS04-001
16 February 2004

Page 14 of 44

DynCorp
WWNS

Defendant 000070

842

IN WITNESS HEREOF, the parties hereto have executed this Indefinite Delivery/Indefinite Quantity Subcontract as of the dates set forth below:

| DynCorp International LLC | Worldwide Network Services, Inc. |
|---|---|
| By: *(signature)* | By: *(signature)* |
| Name: Timothy J. Crawley | Name: Walter Gray |
| Title: Sr. Director, Contracts Admin. | Title: President |
| Date: 12 November 2004 | Date: 12 November 2004 |

WWNS04-001
16 February 2004

Page 15 of 44

DynCorp
WWNS

Defendant 000071

843